KENTUCKY BAR ASSOCIATION, Complainant,

v.

Clinton R. BURROUGHS, Respondent.

Supreme Court of Kentucky.

Feb. 6, 1979.

Leslie G. Whitmer, Director, Michael M. Hooper, Asst. Director, Kentucky Bar Association, Frankfort, for complainant.

Hershel Wooldridge, Louisville, for respondent.

Clinton R. Burroughs, pro se.

## OPINION AND ORDER

The following decision of the Board of Governors of the Kentucky Bar Association is hereby adopted pursuant to and in conformity with SCR 3.370(8):

"FINDINGS OF FACT, CONCLUSIONS OF LAW, OPINION AND ORDER OF THE BOARD OF GOVERNORS OF THE KENTUCKY BAR ASSOCIATION

"On or about December 19, 1977, the respondent, Clinton R. Burroughs, was charged with unethical and unprofessional conduct calculated to bring the bench and bar of Kentucky into disrepute, specific charges being summarized as follows:

I.  Respondent entered a trust agreement with a client whereby he managed the client's funds, and failed to give an accounting.

II.  Respondent commingled his personal funds with the client's funds.

III.  Respondent breached his fiduciary duty to his client.

IV.  Respondent misappropriated $1,651.30 of his client's funds.

"The charge was served by registered mail on December 22, 1977. Respondent filed his response on January 10, 1978. And a Trial Commissioner was appointed, conducted a hearing, and filed his report. The Report made numerous findings, but no recommendation as to guilt or innocence. The matter was considered by the Board of Governors of the Kentucky Bar Association, which makes the following Findings of Fact, Conclusions of Law, and Order.

"FINDINGS OF FACT

"The Board of Governors finds facts as follows:

1.  Respondent had represented Eugene N. Turner on various, petty matters, many of them being in Louisville Police Court, and arising from Turner's consumption of alcohol. Some time in 1975, Turner received $20,500.00 in settlement of a claim for wrongful death of his father. Fearing that he may squander the money, Turner asked Respondent to hold $17,000.00 as Trustee, and to that end a Trust Agreement was executed. The agreement provided for investment of the corpus and invasion of corpus for Turner's benefit in the respondent's discretion. The Agreement was revocable by Turner. It contained no provision for an accounting, but Turner and Respondent agreed orally that Respondent would account in writing as of December 31 of each year.

2.  Respondent deposited $17,000.00 as Trustee in a passbook savings account. Thereafter, Turner began a series of demands on Respondent, and Respondent disbursed funds as follows: (1) directly to Turner; (2) to one Wanda Turner, pursuant to Turner's oral authorization; and (3) to Turner's creditors.

3.  Disbursements to and for Turner were made through an account entitled 'Clinton R. Burroughs, Attorney'. This was Respondent's business account, through which his law practice revenue and expenses passed. Respondent would withdraw money from the Trusteed savings account, deposit it in the 'attorney' account, and write checks on the attorney account for and on behalf of Turner. The transfer of funds from the savings account to the attorney account did not coincide with the checks written to and for Turner. At times, the total of the checks written to and for Turner exceeded the transfers from the savings; at times they were less than the transfer from savings. From this, the Board finds no intent to misuse the funds.

Respondent did not consider the money in the attorney account to be his own (although he legally had title to it) until he transferred it to another 'personal account'. The Board finds that Respondent did not understand the workings of a trustee account for clients' money; that Respondent commingled personal funds and clients' funds, but did so with no intent to defraud.

4.  On one occasion Respondent loaned $1,651.30 of Turner's money to a client, with which to purchase a truck. Although good business precautions were not taken in respect to perfection of a security interest, the loan was repaid with interest, and the Trust Fund profited thereby. Respondent told Turner that the disbursement was to purchase a car for Wanda, which it was not. The check had been written to a car dealer. The Inquiry Tribunal found, and the Board has no reason to doubt, that Respondent forgot why he had written the check and when asked, erroneously thought that he had purchased a car for Wanda.

5.  On one occasion Respondent noted on Trust account records an investment of $3,500.00 in 'XYZ Corporation'. It later developed that XYZ Corporation was, in fact, Computerland, Inc.,; that Respondent has shied from the investment and never withdrawn any money from the savings account for it. No explanation was given

for using the fictitious name 'XYZ Corporation', or for entering the investment on the Trustee account records; however, this was no misappropriation or imprudent investment. It was no investment at all.

6. No accounting was rendered in 1975 because the number of transactions in 1975 was insignificant. In January, 1977, Respondent gave Turner an accounting for 1975 and 1976, which is accurate except for a $100.00 mistake in subtraction, and except that Respondent did not credit himself with cash payments totaling $498.98 he had made on Turner's behalf.

7. On May 17, 1977, respondent gave Turner a check for $1000.00 marked 'Final Draw'. Turner knew that more money should be in the account. Ultimately, a corrected accounting was made, and $3,233.40 remained in Trust. Turner received $1,616.70 as a final distribution, and Respondent took $1,616.70 as a fee for services rendered. No complaint is made that Respondent's fee was excessive. Although the record is not clear, one gathers that Respondent's fee included charges for various legal representations as well as handling the Trust.

## "CONCLUSIONS OF LAW

"The Board makes conclusions of Law as follow:

1. Respondent did not fail to give an accounting.
2. Respondent commingled his funds and his client's funds.
3. Respondent breached no fiduciary duty to his client.
4. Respondent misappropriated no money of his client to his own use.
5. Respondent is guilty of unethical and unprofessional conduct calculated to bring the bench and bar of Kentucky into disrepute.

## "DISCUSSION OF PUNISHMENT

"A majority of nine found no intention to defraud on the part of Burroughs. They considered him to be misguided, and were concerned that he did not know the mechanics of a Trustee Account. They were impressed by the exasperating nature of handling Turner's affairs. Therefore, they considered a public reprimand to be appropriate.

"Other members of the Board of Governors considered Respondent's conduct to warrant greater punishment. Particularily, they believed that the final accounting had to be dragged out of him, and there was some belief that he would have kept the final $3,200.00 if he had not been confronted.

## "ORDER

"The Board concludes that Respondent has been found guilty as charged and recommends that Respondent, Clinton R. Burroughs, be given a public reprimand and that Respondent be required to pay the costs in this action.

BOARD OF GOVERNORS
KENTUCKY BAR ASSOCIATION
/s/ BY_____
B. M. Westberry, President"

Entire Court sitting.

All concur.

Entered February 6, 1979.

/s/ John S. Palmore
Chief Justice