Ronald E. HINES, KBA Member No. 82051, Movant,

v.

KENTUCKY BAR ASSOCIATION, Respondent.

No. 2003–SC–0728–KB.

Supreme Court of Kentucky.

Dec. 18, 2003.

Peter Ostermiller, Kentucky Home Life Building, Louisville, Counsel for Movant.

Bruce K. Davis, Executive Director, Kentucky Bar Association, Jane H. Herrick, Kentucky Bar Association, Frankfort, Counsel for Respondent.

## OPINION AND ORDER

LAMBERT, Chief Justice.

On October 26, 2001, the Inquiry Commission of the Kentucky Bar Association (KBA) charged Movant, Ronald E. Hines of Leitchfield, Kentucky, who was admitted to the practice of law in this Commonwealth on October 30, 1987, with one (1) count of unethical behavior in violation of the Kentucky Rules of Professional Conduct. The charge returned in KBA File No. 6239 alleged that, by acquiring an interest in his client's real estate, and thus commingling the client's property with his own property, Movant had violated SCR 3.130–1.15(a), which provides, in part, that "[a] lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property." The Inquiry Commission's charge stated:

In May 1995, the Hardin District Court appointed Stephen and Vanessa Huffman as limited co-conservators for James Howard Bell (known as "Jimmy"). The Huffmans were re-appointed limited co-conservators in August 1996, after another couple had been appointed and served in the same capacity for a few months. Respondent [Ronald E. Hines] represented Jimmy in the reappointment of the Huffmans.

In about November 1996, Jimmy went to Twin Rivers Ford, an automobile dealership owned by Jesse Vinson. Jimmy purchased a 1997 Ford F–150 Supercab pickup truck, and gave Vinson a check for $38,000.00. Mr. Vinson later discovered that the check was worthless.

Vinson, wanting his money, had Jimmy sign a deed, granting Vinson Jimmy's 150–acre farm in Hardin County. At that time, the farm's assessed value was $72,000.00.

The limited co-conservators did not know anything about Jimmy's purchase, bad check, or the farm transfer at the time of those events.

Sometime in about December 1996, Vanessa Bell discovered the farm transfer to Vinson after seeing the deed in Jimmy's house. Vanessa also learned about this time Jimmy had gone on a "spending spree" with bad checks, purchasing various items. Vanessa called Respondent regarding her discovery.

On December 23, 1996, Respondent and Vanessa entered into a "Contract to Purchase Property and Resolve Liabilities." This document, prepared by Respondent, stated in part:

WHEREAS, said conservator has now become aware that James Howard Bell has written bad checks totaling more than $57,000.00, and

WHEREAS, said conservator has been made aware that numerous criminal complaints have been filed against James Howard Bell, and

WHEREAS, said Bell has signed a Deed conveying real property to Jessie Vinson, record in Deed Book 858, page 624, and

WHEREAS, the Conservator has requested Ronald E. Hines to purchase said real property and to hold same in Hines' name, and

WHEREAS, the conservator has further employed Ronald E. Hines to resolve the civil and criminal liabilities [of] James Howard Bell,

NOW THEREFORE, the Conservator now hereby employees [sic] Ronald E. Hines to resolve the civil and criminal liabilities of James Howard Bell, to attempt to rescind the contractual obligations and/or return the various vehicles purchased by James Howard Bell to their respective vendors, and to purchase the real property conveyance from Bell to Vinson and

to hold said property in Ronald E. Hines' name until the debt of redemption is paid in full, with interest thereon at the rate of 12%.

The Conservator hereby further understands that many, if not all, of said contracts and deeds may be set aside by a court of law, but since time is of the essence, and Mr. Bell has no funds available known to the Conservator, and the Conservators similarly do not have the funds available, the conservator hereby instructs Ronald E. Hines to take and hold the property in his own name as set forth above.

. . .

Respondent negotiated with Vinson for the return of the truck in exchange for the farm. As a result of the negotiations, the farm was deeded from Vinson to Respondent in exchange for the return of the truck and $10,834, which Vinson claimed as lost profit or value on the truck.

The deed from Vinson, dated January 3, 1997, states in part:

[Vinson does] hereby sell and convey unto the [Respondent], for life with remainder to the survivor of him, his heirs and assigns forever, with the [Respondent] conveying a life estate to the house and three acres to James Howard Bell, the following described real property located in Hardin County, Kentucky . . . .

Respondent prepared the deed and had it recorded in Hardin County on January 6, 1997. . . .

In about March 1997, Vanessa told the Hardin District Court about the farm transfer to Respondent. The court ordered Respondent to transfer the farm back to Mr. Bell. Respondent appealed the district court's decision. On appeal, the circuit court held that the district court did not have jurisdiction to order

Respondent to transfer the farm, but that Respondent did not have standing to appeal the decision.

Jimmy died in March 1998. After his death, a will contest ensued. Respondent was a named defendant in the will contest because he had filed a claim (for the $10,834 he paid to Vinson) against Jimmy's estate in the probate matter. Respondent's claim was not contested or disallowed. At the direction of the circuit court, Respondent transferred the farm to the Bell Estate in October 1999.

SCR 3.130–1.15(a) provides, in part: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

The Inquiry Commission charges that Respondent violated SCR 3.130–1.15(a) by engaging in the conduct described above, and, in particular, by acquiring an interest in James Howard Bell's real estate, thereby failing to keep his own property separate from Mr. Bell's property.

Movant does not dispute the charge's factual allegations and further "acknowledges that taking title to the real property in his individual name, and the manner in which he took title to the Bell property, was contrary to his duties under SCR 3.130–1.15(a)." Movant thus moves this Court to publicly reprimand him for this violation of the Kentucky Rules of Professional Conduct. The KBA has filed a response in which it states that "it has no objection to the Movant's motion" and "requests that Movant's motion be granted and that an opinion and order reflecting the public reprimand be entered."

Upon the foregoing facts, and in the absence of an objection by the KBA, Mov-

ant's motion is granted and it is hereby ordered that:

(1) Movant is publicly reprimanded for his violation of SCR 3.130–1.15(a); and

(2) In accordance with SCR 3.450, Movant is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $1,942.93, and for which execution may issue from this Court upon finality of this Opinion and Order.

All concur.