TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000252-KB

KENTUCKY BAR ASSOCIATION                                    MOVANT

V.                          IN SUPREME COURT

JOHN D.T. BRADY                                          RESPONDENT
KBA MEMBER NO. 91731

## OPINION AND ORDER

Respondent, John D.T. Brady, was admitted to the practice of law in the Commonwealth of Kentucky on May 1, 2007. Respondent's Kentucky Bar Association ("KBA") Member Number is 91731 and his bar roster address is 151 Lovett Park Lane, Georgetown, Kentucky 40324. In 2014, the KBA Inquiry Commission issued three separate disciplinary Charges against Respondent in KBA File Numbers 22391, 22639, and 22691. The three Charges were consolidated into one disciplinary action, which has since reached the KBA Board of Governors (the "Board") by default. On May 18, 2015, the Board issued its Findings of Fact, Conclusions of Law, and Recommendation. The Board ultimately found Respondent guilty of committing nine of the thirteen alleged disciplinary infractions, and recommended a suspension from the practice of law for a period of five (5) years, to run consecutively with any other discipline already imposed.

## The Board's Findings of Fact

*KBA File Number 22391*

In July of 2013, Ms. Karen Thompson, a Florida resident, retained Respondent to assist her in a custody dispute regarding her granddaughter. She paid Respondent a retainer fee in the amount of $2,000.00. After obtaining the money, Respondent claimed that he would contact Ms. Thompson via electronic mail in order to discuss how the case would proceed. Ms. Thompson, however, did not hear from Respondent. On numerous occasions, Ms. Thompson attempted to contact Respondent to discuss her case, but was unsuccessful.

In August of 2013, Respondent finally contacted Ms. Thompson and informed her that he had filed a motion on her behalf for visitation and custody. As time went by, Ms. Thompson became increasingly suspicious of Respondent's actions, as he refused to communicate with her. Accordingly, Ms. Thompson called the Fayette and Scott County Circuit Clerks and inquired about the purported motion Respondent claimed to have filed. Both clerks confirmed that no motion had been filed. Moreover, the Scott County clerk told Ms. Thompson that Respondent was no longer practicing law due to health reasons.

In October of 2013, Respondent contacted Ms. Thompson and explained that he had been "in treatment" for the previous six (6) weeks. Despite his absence, Respondent claimed that he filed a custody motion the previous morning. Ms. Thompson once again contacted the court clerk to confirm

whether a pleading was actually filed. Unsurprisingly, Ms. Thompson learned that Respondent did not file a motion on her behalf. Once again, Ms. Thompson made repeated, unsuccessful attempts to discuss the situation with Respondent.

On November 14, 2013, Ms. Thompson drove all the way from her Florida residence to Respondent's office in Lexington, Kentucky. Once there, Ms. Thompson confronted Respondent and demanded that he return to her the retainer fee. Respondent admitted to Ms. Thompson that he is an alcoholic and had already spent the retainer fee on purchasing alcohol and paying his bills. Nonetheless, Respondent promised to reimburse Ms. Thompson for the full amount of the retainer, along with $500.00 for travel expenses. Respondent proceeded to give Ms. Thompson an endorsed check in the amount of $1,500.00, made out to him, and drawn on the account of Ms. Teresa Nugent. In regards to the remaining $1,000.00 owed, Respondent provided Ms. Thompson with a promissory note. Ms. Thompson immediately drove to a nearby bank to cash the endorsed check. To her dismay, Ms. Thompson was unable to cash the check without Respondent. When Ms. Thompson informed Respondent that she was unable to cash the check, he promised to send her a money order for the entire refund amount in the near future.

As time went by, Ms. Thompson did not receive the money order from Respondent, nor was she able to recoup any of the retainer fee. Consequently, Ms. Thompson filed a bar complaint against Respondent. On November 21, 2013, the bar complaint was sent to Respondent's bar roster address via

3

certified mail. When that method proved to be unsuccessful, the bar complaint was sent to the Sheriff's Office for personal service. After several attempts, the Sheriff was unable to serve Respondent. Service was finally made upon Respondent on February 11, 2014, via the Executive Director of the KBA, pursuant to SCR 3.175(2). Respondent failed to file a response to the bar complaint.

The Inquiry Commission issued a four-count Charge against Respondent, which was subsequently amended on November 21, 2014, to add an additional count. As amended, the Charge alleged that Respondent violated the Kentucky Rules of Professional Conduct as follows: Count I, SCR 3.130-1.3 (failure to provide diligent representation); Count II, SCR 3.130-1.4(a)(3) and (4) (failure to keep client reasonably informed and failure to comply with reasonable requests for information); Count III, SCR 3.130-1.16(d) (failure to protect client's interest upon termination of representation, including refunding any advanced payment or fee); Count IV, SCR 3.130-8.1(b) (failure to respond to a lawful demand for information from an admissions or disciplinary authority); and Count V, SCR 3.130-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The KBA was unable to serve Respondent with the Charge through certified mail. However, on January 13, 2015, service was effectuated via the KBA Executive Director pursuant to SCR 3.175(2). Respondent failed to file a subsequent Answer to the Charge, and an Order of Submission was filed on March 10, 2015.

4

On November 21, 2013, Judy and Tyler Ransdell retained Respondent to draft a custody agreement for their daughter concerning their grandchild. The Ransdells also hired Respondent to draft a quitclaim deed. The Ransdells paid Respondent $750.00 and provided him with a file containing personal information. The following day, Respondent provided the Ransdells with a draft custody agreement. After reviewing the document, the Ransdells found numerous errors. They informed Respondent of the mistakes, but he assured them that a corrected draft would be forthcoming. Yet, several months passed by and Respondent failed to provide the Ransdells with a corrected custody agreement or a draft deed. The Ransdells continuously called, texted, and emailed Respondent. Initially, Respondent claimed he was busy and would perform the work the following week, but then Respondent stopped communicating with the Ransdells completely. They then requested that Respondent return the $750.00 retainer fee and their personal file. After failing to hear from Respondent once again, the Ransdells filed a bar complaint. The complaint was sent via certified mail to Respondent's bar roster address on March 4, 2014. The complaint, however, was subsequently returned as unclaimed. Service was then attempted by the Sheriff's Office, but was unsuccessful. On May 8, 2014, service was completed on the KBA Executive Director pursuant to SCR 3.175(2). Similar to Ms. Thompson's complaint, Respondent failed to respond to the bar complaint.

On September 24, 2014, the Inquiry Commission issued a four-count Charge containing the following disciplinary violations: Count I, SCR 3.130-1.3 (failure to provide diligent representation); Count II, SCR 3.130-1.4(a)(4) (failure to comply with reasonable request for information); Count III, SCR 3.130-1.16(d) (failure to protect client's interest upon termination of representation, including refunding any advanced payment or fee); and Count IV, SCR 3.130-8.1(b) (failing to respond to a lawful demand for information from an admissions or disciplinary authority). The Charge was sent to Respondent's bar roster address via certified mail, but was returned as unclaimed. On October 16, 2014, Respondent was served via the KBA Executive Director pursuant to SCR 3.175(2). Respondent did not file an Answer to the Charge, and an Order of Submission was subsequently filed on March 10, 2015.

### KBA File Number 22691

In November of 2013, Ms. Teresa Nugent hired Respondent to represent her in a divorce action. Ms. Nugent paid Respondent a retainer fee in the amount of $1,500.00. One week later, Respondent notified Ms. Nugent that her $1,500.00 check was accidently shredded and that she would be required to reissue a new check. Ms. Nugent complied with Respondent's request and immediately provided him with a new $1,500.00 check.

As previously mentioned, Ms. Nugent was later contacted by Ms. Thompson and informed that Respondent had given her the $1,500.00 check that Respondent had claimed was accidently shredded. Ms. Nugent attempted to contact Respondent in order to obtain an explanation, but she was

6

unsuccessful in locating his whereabouts. Ms. Nugent immediately placed a "stop payment" on the first retainer check she had issued. Unfortunately, Respondent had already cashed Ms. Nugent's second retainer check, despite the fact that he had failed to perform any work on her behalf. Ms. Nugent thusly filed a bar complaint against Respondent. The bar complaint was sent to Respondent's bar roster address via certified mail, but was labeled "returned to sender." Service was effectuated on May 8, 2014, via the KBA Executive Director pursuant to SCR 3.175(2). As with the other bar complaints, Respondent failed to file a response.

On September 30, 2014, the Inquiry Commission issued a four-count Charge against Respondent, alleging the following violations of Kentucky Rules of Professional Conduct: Count I, SCR 3.130-1.4(a)(4) (failure to comply with reasonable request for information); Count II, SCR 3.130-1.15(a) (escrow account violations); Count III, SCR 3.130-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Count IV, SCR 3.130-8.1(b) (failure to respond to a lawful demand for information from an admissions or disciplinary authority). The Charge was sent to Respondent's bar roster address via certified mail, but was then returned as "unclaimed". On October 16, 2014, Respondent was served via the KBA Executive Director pursuant to SCR 3.175(2). Similar to the other two Charges, Respondent did not file an Answer to the Charge, and an Order of Submission was subsequently filed on March 10, 2015.

## The Board's Conclusions of Law

As evident from Respondent's failure to file any responsive pleadings, the three Charges reached the Board by default. After due deliberation, the Board made the following conclusions regarding Respondent's guilt:

As to KBA File 22391, Count I (SCR 3.130-1.3)-Guilty by a 16-0 vote; Count II (SCR 3.130-1.4(a)(3) and (4))-Guilty by a 16-0 vote; Count III (SCR 3.130-1.16(d))-Guilty by a 16-0 vote; Count IV (SCR 3.130-8.1(b))-Not Guilty by an 8-8 vote; and Count V (SCR 3.130-8.4(c))-Guilty by a 15-1 vote.

As to KBA File 22639, Count I (SCR 3.130-1.3)-Guilty by a 16-0 vote; Count II (SCR 3.130-1.4(a)(4))-Guilty by a 16-0 vote; Count III (SCR 3.130-1.16(d))-Not Guilty by a 3-13 vote; and Count IV (SCR 3.130-8.1(b))-Not Guilty by a 7-9 vote.

As to KBA File 22691, Count I (SCR 3.130-1.4(a)(4))-Guilty by a 16-0 vote; Count II (SCR 3.130-1.15(a))-Guilty by a 16-0 vote; Count III (SCR 3.130-8.4(c))-Guilty by a 16-0 vote; and Count IV (SCR 3.130-8.1(b))-Guilty by a 9-7 vote.

## The Board's Recommended Discipline

The Board recommends that Respondent be suspended from the practice of law for a period of five (5) years, to run consecutively with any other discipline currently imposed. In addition, the Board mandates that Respondent comply fully with the terms of his Kentucky Lawyer Assistance Program ("KYLAP") Supervision Agreement. In formulating this discipline, the Board considered his prior disciplinary history. More specifically, in between

8

the time Respondent was admitted to practice law in 2007, until the time he incurred the three Charges at issue, Respondent was disciplined on three different occasions.

Respondent was first disciplined by this Court in September of 2012. *See Brady v. Ky. Bar Ass'n,* 377 S.W.3d 546 (Ky. 2012). The misconduct giving rise to the 2012 disciplinary action is strikingly similar to the misconduct currently at issue. The 2012 disciplinary action is comprised of two separate KBA Files—KBA File Numbers 20238 and 20715—one of which resulted in a formal Charge, while the other only resulted in a bar complaint.

The facts surrounding KBA File Number 20238 occurred in 2011 when Ms. Cheryl Ford hired Respondent to represent her in a divorce proceeding. The trial court ordered Respondent to have the couple's marital business valued. In March of 2011, Ms. Ford provided Respondent with $2,500.00 in order to have a Certified Public Accountant ("CPA") perform the valuation. Despite his claims to the contrary, Respondent failed to obtain a CPA or an estimate. Moreover, Respondent transferred the $2,500.00 from his escrow account to his operating account.

Respondent eventually withdrew from representing Ms. Ford and assured her that he would return her funds in the full amount of $2,500.00. However, the funds were not immediately returned to Ms. Ford. As a result, she made continuous phone calls to Respondent, after which he made repeated claims that the funds were being mailed to her. Ultimately, in late 2011, Ms. Ford was tired of waiting for the funds and decided to file a bar complaint against

9

Respondent. It should be noted that Respondent did eventually reimburse Ms. Ford for the full $2,500.00. Unfortunately for Respondent, the Inquiry Commission had already issued a four-count Charge.

KBA File Number 20715 arose from Respondent's representation of Scott and Beth Fields, whose roof was damaged in an ice storm in 2009. The couple hired Respondent in April of 2010 after the insurance company denied their claim for a new roof. Even in light of ever present water damage, Respondent consistently advised the Fieldses not to repair their roof until he obtained an approval from their insurance company. Approximately one year later, Respondent told the Fieldses that the insurance company agreed to pay for the roof repairs. In fact, in March of 2011, Respondent advised the Fieldses that he received a $15,000.00 check from the insurance company which he would mail to them within the following three weeks. Of course, the Fieldses never received such a check. When questioned, Respondent would comment that the check was "on its way."

During this time, the Fieldses also noticed mold growing on their living room wall. Consequently, they begged Respondent to file a claim against the insurance company. Respondent subsequently told the Fieldses that he had filed suit and even provided them with a preliminary court date. The Fieldses later discovered that Respondent had not filed anything with the court. As a result, the Fieldses filed a bar complaint against Respondent. A formal Charge was never issued because Respondent negotiated a sanction prior to the complaint coming before the Inquiry Commission.

Respondent ultimately admitted to the misconduct alleged in both KBA files. More specifically, Respondent pled guilty to violating the following Kentucky Rules of Professional Conduct: SCR 3.130–1.4(a), SCR 3.130–1.15(a), SCR 3.130–1.16(d), and SCR 3.130–8.4(c). This Court accepted Respondent's proposed discipline and suspended him for a total of 181 days, including 60 days to be served, with 121 days conditionally probated for a period of two years. The terms of Respondent's two-year probation required him to comply with his KYLAP Supervision Agreement and attend the Ethics and Professionalism Enhancement Program (EPEP) within twelve months from the order's entry.

Respondent completed his sixty-day suspension and was reinstated to the practice of law in 2013. However, Respondent was once again suspended from the practice of law on January 23, 2014, for non-payment of his KBA bar dues for the 2013-2014 fiscal year. Moreover, on January 31, 2014, the KBA was informed that Respondent had ceased communicating with his KYLAP supervisor and had checked himself into a treatment facility for drug and alcohol abuse. The KBA motioned this Court to issue a show cause order due to Respondent's failure to comply with the conditions of his probation. On March 20, 2014, we issued a Show Cause Order, which Respondent failed to acknowledge. On August 21, 2014, this Court imposed upon Respondent the remaining 121-day period of suspension. *See Brady v. Ky. Bar Ass'n,* 444 S.W.3d 434 (Ky. 2014). As of the present date, Respondent has not been reinstated to the practice of law.

11

Based on Respondent's prior disciplinary history and the seriousness of his misconduct, the Board, by a 12 to 4 vote, decided to recommend that Respondent be suspended from the practice of law for a period of five (5) years, to run consecutively to any other discipline already imposed. In addition, the Board recommends that Respondent stay in compliance with the terms of his KYLAP Supervision Agreement.

## Conclusion

Neither Respondent, nor the Office of Bar Counsel ("OBC"), has requested review by this Court pursuant to SCR 3.370(7). After reviewing the Board's decision, we conclude that its Findings of Fact and Conclusions of Law are adequately supported by the record and our case law. *See Kentucky Bar Ass'n v. Curtis,* 461 S.W.3d 767 (Ky. 2015) (The Court imposed upon an attorney a five-year suspension due to his inability to provide numerous clients with the agreed upon legal work, for refusing to communicate with those clients, and for failing to return any portion of the fees he received from such clients.). *Kentucky Bar Ass'n v. Hall,* 173 S.W.3d 621 (Ky. 2005) (The Court suspended an attorney for five years for neglecting several client matters, refusing to return retainer fees, failure to return client property, and for failing to respond to bar complaints.). Moreover, we find a five-year suspension to be a suitable punishment for Respondent, as he clearly has returned to his old pattern of abusing alcohol, which, as history has taught us, will likely result in Respondent committing a violation of the Kentucky Rules of Professional Conduct. In approving Respondent's suspension we are undoubtedly

12

protecting the public and the legal profession in general. Accordingly, this Court does not elect to independently review the Board's decision per SCR 3.370(8). As a result, we hereby adopt the Board's Findings of Fact, Conclusions of Law, and Recommendation pursuant SCR 3.370(9).

ACCORDINGLY, IT IS ORDERED THAT:

1. Respondent, John D.T. Brady, KBA Member Number 91731, is found guilty of violating the Kentucky Rules of Professional Conduct, including three counts of SCR 3.130-1.4(a)(3) and (4), two counts of SCR 3.130-1.3, two counts of SCR 3.130-8.4 (c), and one count each of SCR 3.130-1.15(a), SCR 3.130-1.16(d), and SCR 3.130-8.1(b);

2. Respondent is hereby suspended from the practice of law in the Commonwealth of Kentucky for a period of five (5) years, which shall run consecutively to any other discipline currently imposed;

3. Respondent must continue his participation in KYLAP and stay in full compliance with his KYLAP Supervision Agreement throughout all periods of his suspension;

4. Pursuant to SCR 3.390, Respondent shall notify, in writing, all courts in which he has matters pending of his suspension from the practice of law, and notify all clients, in writing, of his inability to represent them and of the necessity and urgency of promptly retaining new counsel. Such notification shall be by letter duly placed in the United States mail within ten days of the date of this Opinion and Order. Respondent shall simultaneously provide a copy of all such letters to the OBC.

13

Furthermore, to the extent possible and necessary, Respondent shall immediately cancel and cease any advertising activities in which he is engaged;

5. At the conclusion of his suspension, Respondent may apply for reinstatement through the Character and Fitness Committee pursuant to SCR 3.505 and SCR 3.510. Respondent will also be required to successfully complete an examination administered by the Board of Bar Examiners pursuant to SCR 3.510(4);

6. Pursuant to SCR 3.450, Respondent is directed to pay all costs associated with this disciplinary proceeding, in the amount of $816.43 for which execution may issue from this Court upon finality of this Order.

All sitting. All concur.

ENTERED: September 24, 2015.

CHIEF JUSTICE

14