**KENTUCKY BAR ASSOCIATION,**
Appellant,

v.

**Henry K. JARRETT, III, Appellee.**

No. 98–SC–561–KB.

Supreme Court of Kentucky.

April 22, 1999.

Reconsideration Denied Aug. 23, 1999.

### *OPINION AND ORDER*

This is a disciplinary proceeding in which the Board of Governors of the Kentucky Bar Association (Board of Governors) recommends that respondent, Henry Kinzer Jarrett, III, be suspended from the practice of law in the Commonwealth for thirty (30) days and that he be ordered to pay the cost of this proceeding. We agree and so order.

This action began when one of Jarrett's clients, Charlotte Smith, filed a complaint against him with the KBA. In October of 1994, Ms. Smith retained Jarrett to represent her in a matter involving a pawn shop. Apparently, Ms. Smith had pawned a ring and, upon attempting to retrieve it, was informed that it was not there. Jarrett filed suit in Jefferson District Court, but the suit was dismissed because the pawn shop had changed owners in the interim. He then made efforts to contact the shop's previous owner, but those efforts proved fruitless.

Beginning in early 1996 and continuing until October of that year, Ms. Smith regularly contacted Jarrett to see how her case was proceeding. In early October 1996, Jarrett falsely informed Ms. Smith that he had settled the case with the previous owner and had been successful in obtaining a sum of money for her. He then told Ms. Smith that her money was being held by the court and would not be available for two weeks. On October 30, 1996, Jarrett told Ms. Smith to come to his office to get the monies owed her. When Ms. Smith arrived at Jarrett's office, she received a check from his escrow account for eight hundred sixteen dollars ($816.00). In the memorandum portion of the check, the words "pawnshop settlement" were written.

Following her visit to Jarrett, Ms. Smith went to the Jefferson County Hall of Justice to try to find the court records of her claim against the pawnshop owner. She was unable to locate any record of her case. The clerk offered to call Jarrett to get the case number and then call Ms. Smith. Ms. Smith called the clerk later in the day and was told that Jarrett (who had been contacted by the clerk) was going to get in touch with her.

That evening Jarrett visited Ms. Smith's home in an attempt to speak with her. Ms. Smith was not there, so Jarrett spoke with Mr. Arthur Weathers. Jarrett informed Mr. Weathers that he had lied to Ms. Smith regarding the lawsuit and the source of the money he had given her. He left a second check with Mr. Weathers in the amount of three hundred ninety-three dollars ($393.00) to be given to Ms. Smith. Several days later, he contacted Ms. Smith via telephone and admitted that he had lied. The source of the funds for the first check given to Ms. Smith was not from a settlement with the pawnshop owner, but from Jarrett's personal funds which he deposited into his escrow account. The second check was drawn directly on his personal checking account.

Following Ms. Smith's complaint on January 9, 1997, the Kentucky Bar Association Inquiry Tribunal issued a charge of violations of SCR 3.130–8.3(c) (dishonesty, fraud, deceit or misrepresentation) and SCR 3.130–1.15(a) (commingling). The Board of Governors found, by a vote of 13–0, that Jarrett violated SCR 3.130–8.3(c) by misleading Ms. Smith as to the status of her lawsuit and its ultimate resolution. The Board of Governors also found, by a vote of 4–9, that Jarrett did not violate Rule 3.130–1.15(a) By a vote of 9–4, the Board of Governors recommended that Jarrett be suspended from practice for thirty (30) days and be required to pay the costs of the proceeding against him. Jarrett asserts that a suspension of thirty (30) days is an improper punishment for a violation of SCR 3.130–8.3(c).

## I. COUNT I—LYING TO A CLIENT— SCR 3.130–8.3(c).

There is no question that Jarrett lied to his client. He deceived Ms. Smith regarding the status and ultimate resolution of her case. It was not until his deception was being uncovered by Ms. Smith that he took steps to inform her of the truth. The only issue is the appropriate penalty for this violation.

Jarrett began lying to Ms. Smith early in October 1996 when he informed her that money had been paid to him to settle her claim, while he had received no such funds. On at least two other occasions in October, Ms. Smith called Jarrett about the status of her case and Jarret falsely told her that there had been a delay in the case due to the court system. Jarrett admitted his deceit only after Ms. Smith began to investigate whether what he had told her was true. This was not a single lie told under pressure which the liar corrected as soon as the pressure had been relieved and the moment passed. Rather, Jarrett engaged in a course of conduct spanning one full month in which he told one falsehood after another. He had an entire month to real-

ize the unethical nature of his behavior, but he did not.

Law is a profession which demands trust. Lawyers must be able to rely on each other's word. Courts must take what lawyers say at face value. Clients must be able to rely on the truthfulness of what their lawyers tell them. Otherwise, our system of justice cannot operate. Jarrett's misconduct in lying to Ms. Smith has ramifications well beyond the injury to Ms. Smith's belief in the legal profession. His misconduct further erodes public confidence in the members of the bar and our system of justice.

Jarrett asserts that the only misrepresentation he made was concerning the source of funds of the first check Ms. Smith received and that this misrepresentation was corrected the same day. Additionally, he asserts that his client did not suffer any damages because she received the full amount to which she was entitled. We cannot agree with his assessment. Jarrett repeatedly misled Ms. Smith as to the status of the "settlement" in this case. When he finally did confess the truth to her, it was only when he knew he had been detected in his deception. We accept the recommendation of the Board in finding respondent was guilty of violating Rule 3.130–8 .3(c) by repeatedly lying to his client as to the status and ultimate resolution of the lawsuit (which was never properly filed).

## II. COUNT II—COMMINGLING OF PERSONAL FUNDS AND CLIENT FUNDS IN ESCROW ACCOUNT—SCR 3.130–1.15(a)

█ Since Jarrett admits to placing his personal funds in his escrow account and then using them to pay Ms. Smith, the issue before this Court is only whether such conduct violates SCR 3.130–1.15(a). Rule 3.130–1.15(a) provides

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a repre-

sentation separate from the lawyer's own property.

The evil sought to be prevented by Rule 1.15(a) is the use of escrow funds to pay the personal expenses of the attorney. Jarrett deposited his own funds in his escrow account so that he could write a check to his client in payment of the alleged "settlement". This was not a separate violation of "commingling," but an essential element of the charge of fraud described in Count I. Jarrett's intent was to pay off the client with his own funds while trying to convince her that the money came from his escrow account. Commingling would have occurred if he had written the check on the escrow account without depositing sufficient personal funds in the account to cover the check.

## CONCLUSION

Based on the facts and law discussed above, we find that respondent is guilty of violating SCR 3.130–8.3(c) (deceiving a client), but not SCR 3.130–1.15(a) (commingling of funds).

THEREFORE IT IS HEREBY ORDERED as follows:

(1) Respondent, Henry Kinzer Jarrett, III, is hereby suspended from the practice of law in the Commonwealth of Kentucky for a period of thirty (30) days.

(2) In accordance with SCR 3.450 and SCR 3.480(3), respondent is directed to pay all costs associated with this disciplinary proceeding against him. Upon the finality of this opinion and order of execution may issue from this Court for said costs.

(3) Pursuant to SCR 3.390, respondent is hereby ordered to provide notice to any clients, if applicable, he currently represents of his inability to provide further legal services, to notify all courts in which he has matters of his pending suspension and to provide the Director of the Kentucky Bar Association with a copy of all

such letters simultaneously to their mailing.

All concur.

ENTERED April 22, 1999.

/s/ Joseph E. Lambert
Chief Justice