/s/ John D. Minton, Jr.
    Chief Justice

John D.T. **BRADY**, Movant

v.

**KENTUCKY BAR ASSOCIATION,**
**Respondent.**

No. 2012–SC–000478–KB.

Supreme Court of Kentucky.

Sept. 20, 2012.

## OPINION AND ORDER

John D.T. Brady[1] misled clients and removed money from a client's escrow account for his personal use. The facts are undisputed. The Inquiry Commission issued a four-count Charge against Brady (KBA File No. 20238) in March 2012, alleging violations of Kentucky Supreme Court Rules (SCR) 3.130–1.4(a)(4), 3.130–1.15(a), 3.130–1.16(d), and 3.130–8.4(c). And Brady admits to another Bar Complaint (KBA File No. 20715) filed against him.

Brady has admitted to all alleged violations and now moves the Court to impose a 181–day suspension with 121 days probated for two years and the remaining 60 days suspended from the practice of law. The conditions of this probation include Brady's agreeing to continue his present monitoring agreement with the Kentucky Lawyer Assistance Program (KYLAP). And Brady agrees to attend, at his expense, the next scheduled Ethics and Professionalism Enhancement Program (EPEP) within 12 months after entry of this Court's Order.[2] In addition, Brady agrees to pay the costs of these proceedings. The KBA does not object to the motion.

## I. KBA FILE NO. 20238.

Cheryl Ford hired Brady to represent her in divorce proceedings in December 2010 or January 2011. Ford was required by court order to have a marital business valuated. Brady told Ford that he had contacted a Certified Public Accountant (CPA) to perform the audit for $2,500. In March 2011, Ford gave Brady $2,500 to pay for the CPA's audit. And Brady immediately deposited the money into his escrow account.

Brady did not, at any time, pay a CPA to perform the audit. In April 2011, Brady notified Ford that he wished to withdraw from representing her in this matter. And he informed her that she would receive a refund of the $2,500. But, in May 2011, Brady transferred the balance of his escrow account, $2,500, into his office operating account.

In June 2011, Brady sent a text message to Ford informing her that he had received a refund from the CPA and requested an address of where to send the money. Ford never received the refund. In July 2011, Ford received a text message from Brady stating the refund check should be in the mail. Later in July 201.1, after Ford's second certified letter to Brady, his wife responded to inform Ford that he had been hospitalized. Ford did not receive a refund until December 2011, after the filing of a bar complaint.

The Inquiry Commission issued a four-count Charge against Brady for his conduct in representing Ford. The Charge alleged violations of: (1) SCR 3.130–1.4(a),[3]

---

1. KBA Member No. 91731, bar roster address, 209 E Main Street, P.O. Box 939, Georgetown, Kentucky 40324. Brady was admitted to practice law on May 1, 2007.

2. Brady further agrees that he will not receive nor will he seek continuing education credit for his attendance at the next scheduled EPEP.

3. SCR 3.130–1.4(a) reads, "A lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4)

by failing to promptly comply with Ford's request for information concerning the $2,500; (2) SCR 3.130–1.15(a),[4] by transferring $2,500 paid by Ford, from his escrow account into his operating account, when those funds were not a payment for services rendered but were intended to pay an accountant; (3) SCR 3.130–1.16(d),[5] by failing to return an advance payment of an expense that was not earned to Ford upon withdrawing from her representation; and (4) 3.130–8.4(c),[6] by telling Ford he received a refund from the accountant when he had never paid the accountant and had instead transferred the funds into his office operating account, and by telling Ford a refund check had been mailed to her in July 2011, when that was not the case.

## II. KBA FILE NO. 20715.

The roof of Scott and Beth Fields's home was damaged during an ice storm in January 2009. They fought with their insurance company for over a year before hiring Brady in April 2010. Upon initial inspection of the Fieldses' residence, Brady suggested to delay all repairs to the roof until the insurance company had offered approval and also disregarded the Fieldses' request to file a claim with the Department of Insurance.

For six months, Brady worked on the case; and he continually insisted that the roof not be repaired without the approval of the insurance company. The Fieldses began to notice increasing evidence of water damage to their home. In January 2011, nearly a year after taking the case, Brady informed the Fieldses that the case had been handed over to the insurance company's lawyers and progress was being made. Brady claimed to have received a signed $15,000 settlement agreement in March 2011. And he told the Fieldses they would receive a check within three weeks. But the money was never delivered to the Fieldses. Upon questioning, Brady insisted that the money was on its way.

In April 2011, the Fieldses noticed mold growing on a picture hanging on their living room wall. They insisted that Brady either file a claim in court or they were

promptly comply with reasonable requests for information; and (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law."

4. SCR 3.130–1.15(a) reads, "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client, third person, or both in the event of a claim by each to the property. The separate account referred to in the preceding sentence shall be maintained in a bank which has agreed to notify the Kentucky Bar Association in the event that any overdraft occurs in the account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

5. SCR 3.130–1.16(d) reads, "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

6. SCR 3.130–8.4(c) reads, "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation."

going to hire a new lawyer. Brady, claiming to have filed a claim in court, told the Fieldses it would be four weeks before they could get a court date. The Fieldses checked with Brady every week for four weeks. Brady finally told them that they had a preliminary hearing with the judge and the insurance company. Both Mr. and Mrs. Fields requested time off from work to attend the hearing, but Brady phoned and told them the insurance company had cancelled mere hours before the hearing was to take place.

The Fieldses then filed a complaint with the Department of Insurance. After submitting the complaint, the Fieldses contacted the Department of Insurance to ensure that everything was in order but were notified that Brady had asked that the claim be held because he forgot to attach a document. The Fieldses expressed concern to Brady about his competency to handle their case. Finally, Brady gave them a court date.

When the Fieldses contacted the court regarding their court date, they discovered that Brady had not filed a single document with the court in a year, despite continually claiming to have filed them. After repeated attempts to contact Brady, the Fieldses were notified by his wife that he had been hospitalized. The Fieldses immediately hired a new lawyer. The roof of the Fieldses' residence was not repaired during the entirety of Brady's representation; and they estimate the water damage to be about $10,000.

The Inquiry Commission has not issued a Charge against Brady, but he admits to all allegations in the Fieldses' Complaint. Under SCR 3.480(2), a Charge is not required for a negotiated sanction to be considered by this Court.[7] Brady is allowed to terminate the "disciplinary proceedings at any stage." KBA File No. 20715 and the relevant negotiated sanction are properly before this Court.[8]

## III. CONCLUSION.

Brady admits he violated SCR 3.130–1.4(a), 3.130–1.15(a), 3.130–1.16(d), and 3.130–8.4(c). And he admits to all of the factual allegations in the Complaint filed by Beth Fields, KBA File No. 20715. Under SCR 3.480(2), Brady and the KBA agreed to the imposition of discipline and ask this Court to impose upon him a suspension from the practice of law for 181 days, with all but 60 of those days probated for two years. The terms of the probation require Brady to continue his present monitoring agreement with KYLAP. And Brady must attend, at his own expense, the next scheduled Ethics and Professionalism Enhancement Program (EPEP) offered by the Office of Bar Counsel (OBC) within twelve months following entry of this Opinion and Order. Brady will not be allowed to apply for CLE credit of any kind for this program and must furnish a release and waiver to the OBC to allow the OBC to verify he has not reported any such hours to the CLE Commission. And

---

**7.** *See* SCR 3.480(2) ("Any member who is under investigation pursuant to SCR 3.160(2) or who has a *complaint* or charge pending in this jurisdiction, and who desires to terminate such investigation or disciplinary proceedings at any stage of it may request Bar Counsel to consider a negotiated sanction.") (emphasis added).

**8.** This Court notes that the KBA and Brady did not follow proper procedure under SCR

3.480(2) in reaching this negotiated sanction. SCR 3.480(2) requires that the "member and Bar Counsel agree upon the specifics of the facts, *the rules violated*, and the appropriate sanction." Here, no rules violations were alleged in the Fields Complaint. But this Court, in its discretion, chooses to accept the negotiated sanction despite this improper practice.

Brady must pay the cost of these proceedings.

In the event that Brady fails to comply with any of the terms of discipline stated here, upon motion of the OBC, this Court may impose the remaining 121 days of suspension, which will result in a total suspension of 181 days. This would require Brady to apply for reinstatement through the Character and Fitness Committee, pursuant to SCR 3.505 and SCR 3.510.

After reviewing the record, the standards, and other relevant authorities, this Court concludes that the discipline proposed by Brady is adequate. Thus, the Court ORDERS:

1) John D.T. Brady, KBA Member No. 91731, is guilty of all charges alleged in KBA File No. 20238 and KBA File No. 20715;

2) Brady will be suspended from the practice of law for a period of 181 days for violation of SCR 3.130–1.4(a), 3.13.0–1.15(a), 3.130–1.16(d), and 3.130–8.4(c);

3) Pursuant to SCR 3.390, Brady shall notify, in writing, all courts in which he has matters pending of his suspension from the practice of law, and notify all clients, in writing, of his inability to represent them and of the necessity and urgency of promptly retaining new counsel. Such notification shall be by letter duly placed in the United States mail within ten days of the date of this Opinion and Order. Brady shall simultaneously provide a copy of all such letters to the Office of Bar Counsel. Furthermore, to the extent possible and necessary, Brady shall immediately cancel and cease any advertising activities in which he is engaged;

4) All but 60 days of the suspension will be probated for a period of two years, subject to the conditions set forth here;

5) If Brady fails to comply with any of the terms of discipline as set forth here, upon the OBC's motion, the Court will impose the remaining 121–day period of suspension, which will result in a total suspension of 181 days; and

6) In accordance with SCR 3.450, Brady is directed to pay $150.95, the cost associated with this proceeding, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

