TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000253-KB

**FINAL**

**DATE** 12-29-15 EdiłGrouiH, D.C

KENTUCKY BAR ASSOCIATION                                    MOVANT


V.                          IN SUPREME COURT


DAVID LYNN HILL                                           RESPONDENT

## OPINION AND ORDER

Pursuant to SCR 3.370(7),[1] the Office of Bar Counsel of the Kentucky

Bar Association (Bar Counsel) and David Lynn Hill, Kentucky Bar Association

(KBA) Member No. 91025, separately seek review of the findings of fact,

conclusions of law, and recommendations of the Board of Governors of the

Kentucky Bar Association (Board) entered May 18, 2015 in this disciplinary

proceeding involving numerous ethical violations by Hill. Hill was admitted to

the practice of law in Kentucky on October 14, 2005, and his bar roster

address is 431 South Broadway, Suite 331, Lexington, Kentucky, 40508.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This proceeding involves fifteen counts of alleged misconduct by Hill in

three different actions initiated by the KBA Inquiry Commission. The charges

---

[1] SCR 3.370(7) provides that "[w]ithin thirty (30) days after the Board's decision is filed with the Disciplinary Clerk, Bar Counsel or the Respondent may file with the Court a Notice for the Court to review the Board's decision stating reasons for review[.]"

resulted principally from Hill systematically misleading his clients about the status and progress of their respective cases. Malfeasance relating to his escrow account is also involved. Following an evidentiary hearing, the trial commissioner issued a report finding Hill guilty of twelve of the fifteen counts, and not guilty of the remaining three. As a result of these findings, the trial commissioner recommended that Hill be suspended from the practice of law for a period of five years.

Pursuant to SCR 3.370(5)(a)(ii),[2] the Board voted to reject the report of the trial commissioner and to consider the matter by *de novo* review. Upon its independent review with two members recused, the Board unanimously voted in agreement with the trial commissioner to find Hill guilty of the same twelve counts, and not guilty of the remaining three. Hill does not contest the Board's findings of guilt and, indeed, admits to the underlying conduct and to his guilt concerning the twelve ethical violations; accordingly, we need not extensively examine the guilt-innocence aspect of the cases except as needed to understand the scope of the wrongdoing at hand. As a result of the violations, in stark contrast to the trial commissioner's recommendation, the Board recommended a 181-day suspension from the practice of law along with the additional conditions that Hill obtain the approval of the KBA's Character and Fitness Committee prior to readmission and that Hill continue to obtain

---

[2] SCR 3.370(5)(a)(ii) permits the Board, after deliberation, and consideration of oral arguments, if any, to decide by a roll call vote "[t]o conduct a *de novo* review, in its discretion. In that event it shall make findings as to the guilt or innocence on each Count, and the appropriate discipline to be imposed, if any, and take separate votes as to each."

2

substance abuse counseling through the KBA's Kentucky Lawyer Assistance Program (KYLAP).

Pursuant to SCR 3.370(7), Bar Counsel and Hill both seek review of the Board's disciplinary decision. Bar Counsel agrees with the disciplinary recommendation of the trial commissioner and has filed arguments in this proceeding in support of a five-year suspension period. Hill, in contrast, argues that in light of the mitigation evidence he has presented in this proceeding, even the Board's recommended sanction is excessive. He contends that the disciplinary proceeding should be resolved with a suspension from practice of 180 days or less with an appropriate portion of that sanction probated. His offered resolution provides for eventual automatic reinstatement, subject to his continued compliance with his already-existing recovery under the guidance of KYLAP.

The principal difference between the sanctions recommended by the Board and Bar Counsel centers upon the weight to be assigned to Hill's mitigation evidence. The mitigation evidence, in turn, centers upon Hill's depression, associated anxiety issues, alcoholism, and other psychological factors affecting his life during the time of his ethical violations and upon Hill's independent efforts to address these problems.

Based upon our review of the record, the arguments of the parties, the applicable ethical rules, and the mitigation evidence presented by Hill, we find that the proper disciplinary sanction in this matter is suspension from the practice of law for a period of eighteen months. Reinstatement is subject to all conditions set forth in the Supreme Court Rules including review by the

3

Character and Fitness Committee. Reinstatement is further conditioned upon Hill's continued treatment for substance abuse in conjunction with the KYLAP program.

## II.   KBA FILE NO. 21450 – THE MORRIS SAID MATTER

KBA File No. 21450 concerns Hill's representation of Morris Said in a contract dispute with his business property leasor. Hill's representation of Said began in October 2010 while Hill was employed at his former law firm. In March 2011, Hill's former firm billed Said for legal work associated with the lease dispute.

Hill left the firm in March or April 2011, taking Said's representation with him into his solo practice. In January 2012, Hill sent a letter to Said purporting to update him on the case. In the letter, Hill told Said that there had been a pretrial conference in connection with the litigation and that the conference "went fine." Hill further informed Said that "the Judge went ahead and set some discovery and pre-trial deadlines, as well as a tentative trial date in June 2012." Hill discussed in the letter how he planned to proceed with the case. In fact, Hill had never filed a lawsuit in the contract dispute, and essentially every substantive representation contained in the January 2012 letter was untrue.

In July 2012, Said began the first of several unsuccessful attempts to contact Hill, including visiting his office and leaving telephone messages. In September, Said sent a certified letter, which Hill received but did not answer.

As a result of the above conduct, the Inquiry Commission filed a three-count charge against Hill alleging the following ethical violations:

4

Count I: Violation of SCR 3.130-1.4(a)(3) (failure to "keep the client reasonably informed about the status of the matter") for the misrepresentations contained in the January 2012 letter and for falsely implying that a lawsuit had been filed concerning the contract dispute.

Count II: Violation of SCR 3.130-1.4(a)(4) (requiring an attorney to "promptly comply with reasonable client requests for information") for Respondent's avoidance of Said and failure to respond to his phone calls and messages and the certified letter.

Count III: Violation of SCR 3.130-8.4(c) (prohibiting an attorney from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation") for fabricating facts that would cause Said to believe that a lawsuit had been filed in the matter when, in fact, no lawsuit had been filed.

The trial commissioner found Hill guilty of all charges. On review, the Board also found Hill guilty of all charges.

### III.   KBA FILE NO. 21496 – THE HAMBURG PARK MATTER

KBA File 21496 concerns Hill's representation of the Hamburg Park Townhomes Owner's Association (the Association) in various civil collection matters pertaining to homeowner dues and assessments. The KBA file primarily concerns a dispute between the Association and Kenneth R. Adams, but also involves a contemplated foreclosure action against Windy Rochester. Hill's contact with the Association was Richard Cheeks.

In November 2010, the Association authorized Hill to file suit against Adams. A few months later, after Cheeks asked Hill for an update on the case, Hill falsely reported motions to dismiss were pending and that a pretrial conference had been scheduled.

In April 2012, Cheeks wrote to Hill by email, instructing him to bring the Adams matter to a conclusion, either by summary judgment or trial. He also asked for a status update on the Rochester matter. Hill replied with false

5

information concerning the status of both matters. Eventually, after additional email exchanges, Hill told Cheeks that the Adams matter had been successfully settled "for the full amount + costs and attorney's fees," and that the judgment would be paid in "four equal payments beginning this month." None of that was true.

Over the next several months, Hill continued to mislead Cheeks concerning the status of the Adams case. He continued with his practice of fabricating details concerning the litigation; he also sent checks drawn upon his IOLTA trust account to Cheeks representing funds Hill claimed to have collected as a result of the successful litigation. Virtually all of Hill's information to Cheeks about the status of the Adams matter was based upon lies. The fact was that, although Hill had actually filed the suit, he had not moved the case forward, and in November, 2012, the Fayette Circuit Court issued a show cause notice for dismissal of the case based upon lack of prosecution. That prompted Hill to enter into a settlement agreement with Adams, but the agreement reached was inconsistent with the litigation directives given to Hill by the Association. In the meantime, Hill told Cheeks that the suit against Rochester was proceeding when, in fact, he did not even file that suit until December 20, 2012.

Between December 2, 2010 and July 19, 2012, Hill billed the Association four times for work done consistent with his false communications to Cheeks about the Adams and Rochester matters, but inconsistent with the work he had actually performed. The Association paid the invoices. The Inquiry

6

Commission construes Hill's acceptance of the fee as a violation of the theft by deception statute, KRS 514.040(1).

Based upon the above conduct the Inquiry Commission charged Hill as follows:

Count I: Violation of SCR 3.130-1.2 (requiring that "a lawyer shall abide by a client's decision concerning the objectives the representation, and, . . . shall abide by the client's decision whether to settle a matter") for negotiating and accepting a settlement in the Adams case not consistent with the Association's decision and specific instructions concerning an acceptable settlement in the matter.

Count II: Violation of SCR 3.130-1.3 (providing that "a lawyer shall act with reasonable diligence and promptness in representing a client") by failing to complete a pretrial step between the filing of the Adams lawsuit in November 2010 and the circuit court's notice to dismiss for lack of prosecution filed in November 2012.

Count III: Violation of SCR 3.130-1.4(a)(3) (requiring that "a lawyer shall keep the client reasonably informed about the status of the matter") for repeatedly providing false information as to the status of both the Adams and Rochester matters to the Association in response to requests for information on the status of the cases.

Count IV: Violation of SCR 3.130-1.4(a)(4) (requiring that a lawyer shall "promptly comply with reasonable requests for information") for repeatedly providing false information in response to the Association's periodic requests for information concerning the Adams and Rochester cases.

Count V: Violation of SCR 3.130-1.15(a) (requiring that "a lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property") for depositing his own funds into his escrow account to cover escrow checks 1092 and 1097 as there was no settlement in the Adams matter and thus no settlement funds related to that matter in the account when those escrow checks were written by Respondent and forwarded to the Association.

Count VI: Violation of SCR 3.130-8.4(b) (providing that it is professional misconduct for a lawyer to "commit a criminal act reflecting adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects") for violating the theft by deception statute, KRS 514.040(1)(a) and (c), a Class D felony, by Respondent's course of conduct during which he repeatedly provided false information to the Association when he billed it in the amount of

approximately $2,419.00 in legal fees and expenses in the Adams and Rochester matters for services he had not actually provided.[3]

Count VII: Violation of SCR 3.130-8.4(c) (providing that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation") for his repeated false representations and fabrications to the Association regarding the Adams and Rochester matters; his fabrications and dishonest billing practices; and his depositing of his own funds into his escrow account to cover checks issued to the Association as partial payment toward an agreed settlement in the Adams matter that did not exist when the escrow check was issued.

The trial commissioner found Hill guilty of all charges except Count V.

Upon its review, the Board also found Hill guilty of all charges except Count V.

Hill's acquittal on Count V was based upon *KBA v. Jarrett*, 997 S.W.2d 456 (Ky. 1999), holding that an attorney who deposits his own money into his escrow account to fund a fictional "settlement" was not comingling under SCR 3.130-1.15; "[t]he evil sought to be prevented by Rule 1.15(a) is the use of escrow funds to pay the personal expenses of the attorney," not the other way around. *Id.* at 458.

## IV.    KBA FILE NO. 21630 – THE ALAN BRYAN MATTER

In October 2010, Hill agreed to represent Alan Bryan, a landlord wanting to sue three tenants who had moved out of a rental unit before the term of their lease had expired. He advised Bryan to change the locks on the rental unit, which Bryan did, and in December 2010, Hill filed suit against the tenants in Fayette Circuit Court to collect the unpaid rent due under the lease.

---

[3] Though it appears that Hill was never actually criminally charged as a result of this payment, "an attorney can be guilty of [an ethical violation] even in the absence of criminal charges or a conviction." *KBA v. Greene*, 386 S.W.3d 717, 730 (Ky. 2012) (citing *KBA v. McDaniel*, 205 S.W.3d 201 (Ky. 2006)).

In December 2011, the circuit court granted summary judgment in favor of the tenants, dismissing Bryan's claim for the unpaid rent that accrued after the locks were changed. The court reasoned that by virtue of "changing the locks and otherwise exercising his dominion over the real estate . . . the landlord has no valid claim for rent past October 2010." Hill did not inform Bryan about this adverse decision.

In January 2012, Bryan inquired about the status of his case and Hill responded by saying, "I have a pretrial conference with the Judge this week." Bryan inquired again in March 2012 for an "update on the lawsuit." Hill failed to respond so on April 23 Bryan again requested an update, alerting Hill that the case no longer appeared on kycourts.net as a pending case. Hill replied that he had "not received anything" but would "swing down to the courthouse" that afternoon to find out about the case.

After yet another inquiry from Bryan on April 30, Hill replied: "Good news! The clerk yesterday told me we should be getting our signed judgment in the mail in the next day or so. I will scan it to you as soon as I get it. Once that is received, there's a 10 day waiting period, then I will file the judgment lien and begin trying to collect (garnishment, etc.). Let me know if you have any additional thoughts or questions."

When the judgment did not arrive as promised, Bryan sent two more emails asking Hill to explain. Hill then sent to Bryan an escrow account check for $77.84, asserting that it "represents the entire proceeds I recovered from the garnishment of [one of the tenant's] bank account." Hill went on to say that if the tenant's employer did not return the garnishment subpoena that he

9

would be "hauling the manager to Court to testify as to why the garnishment has not been returned."

Bryan left a follow-up message with Hill asking for a copy of the Judgment but did not receive a response. Bryan eventually went to the courthouse and discovered the order dismissing the lawsuit. Bryan subsequently went to Hill's office and requested a refund of a portion of the fee charged in the matter. After that date Hill had no further contact with Bryan, and Bryan eventually obtained another attorney to pursue the matter.

As a result of the above conduct the Inquiry Commission charged Hill with the following five ethical violations:

Count I: Violation of SCR 3.130-1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation") for advising Bryan to change the locks of the rental property, which resulted in the eventual summary judgment adverse to Bryan.

Count II: SCR 3.130-1.4(a)(3) (requiring that an attorney must "keep the client reasonably informed about the status of the matter") for failing to inform Bryan about the summary judgment order, and by affirmatively misleading Bryan about the status of the matter on several subsequent occasions.

Count III: Violation of SCR 3.130-1.4(a)(4) (requiring a lawyer to "promptly comply with reasonable requests for information") for affirmatively misleading Bryan from the time of the December 2011 summary judgment until the termination of the representation, despite numerous requests by Bryan for information, and by further ignoring repeated requests by Bryan for information during the same time period.

Count IV: Violation of SCR 3.130-1.15(a) ("A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with the representation separate from the lawyer's own property") for depositing Respondent's own funds into his attorney escrow account in order to issue escrow account check 1086 as part of a scheme to deceive Bryan regarding the status of the lawsuit.

Count V: Violation of SCR 3.130-8.4(c) (providing that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud,

10

deceit or misrepresentation") for his multiple deceptions to Bryan in the matter, including failing to inform him about the summary judgment and his deception regarding the escrow check which was intended to deceive Bryan into believing he had won the case.

The trial commissioner found Hill guilty of all charges except Counts I and IV. Upon review, the Board agreed. As to Count I, the trial commissioner and the Board recognized that Hill's advice to Bryan to change the locks on the rental unit was not "incompetent" for purposes of SCR 3.130-1.1. Bryan's legal situation was complex, and legal advice is not rendered "incompetent" simply because it failed to achieve the desired result, or because it resulted in an unfavorable result.

Hill's acquittal on Count IV – using his own money to fund the payment to the client - was justified based upon *KBA v. Jarrett, supra*, holding that an attorney who deposits his own money into his escrow account to fund a fictional "settlement" was not comingling under SCR 3.130-1.15.

## V. THE ADJUDICATORY DETERMINATION

The findings of fact by the trial commissioner and the Board of Governors are advisory only. Accordingly our review is *de novo* as to both issues of law and findings of fact. *KBA v. Greene*, 386 S.W.3d 717, 722 (Ky. 2012). It is the duty of this Court to undertake an independent examination of the record and the pertinent facts of the case. *KBA v. Berry*, 626 S.W.2d 632, 633 (Ky. 1981).

Here, Hill in effect admits to the underlying conduct as charged by the Inquiry Commission and as found by the trial commissioner and the Board. He does not challenge the twelve violations found by the trial commissioner

11

and the Board; Bar Counsel does not challenge Hill's acquittal on three of the original fifteen charges.

Based upon our review of the evidence of record, we agree with the Board's determinations as follows:

A.  In KBA File 21450, the Morris Said matter, Hill is guilty under Count I of violating SCR 3.130-1.4(a)(3); under Count II of violating SCR 3.130-1.4(a)(4); and under Count III of violating SCR 3.130-8.4(c).

B.  In KBA File 21496, the Hamburg Park matter, Hill is guilty under Count I of violating SCR 3.130-1.2; under Count II of violating SCR 3.130-1.3; under Count III of violating SCR 3.130-1.4(a)(3); under Count IV of violating SCR 3.130-1.4(a)(4); under Count VI of violating SCR 3.130-8.4(b); and under Count VII of violating SCR 3.130-8.4(c).  We further find that Hill is not guilty of violating SCR 3.130-1.15(a) under Count V.

C.  In KBA File No. 21630, the Alan Bryan matter, Hill is guilty under Count II of violating SCR 3.130-1.4(a)(3); under Count III of violating SCR 3.130-1.4(a)(4); and under Count V of violating SCR d3.130-8.4(c). He is not guilty under Count I of violating SCR 3.130-1.1 and under Count IV of violating SCR 3.130-1.15(a).

## VI.  DISCIPLINARY ISSUES

Upon an adjudication of guilt, our task is to impose the appropriate sanction in light of the ethical misconduct.  SCR 3.380 provides that "[u]pon findings of a violation of these rules, discipline may be administered by way of private reprimand, public reprimand, suspension from practice for a definite

time, all of which may be with or without such conditions as the Court may impose, or permanent disbarment."

As outlined above, Hill is guilty of twelve ethical violations involving a pervasive pattern of lying to three clients. Not only did he fail to keep these clients informed about the status of the legal matter entrusted to him, he deliberately mislead them about the true status of their cases; he ignored their repeated requests for information, and he charged them for work he had not done.

The Office of Bar Counsel, KBA Board of Governors, and Hill express differing positions as to the appropriate punishment to be imposed for Hill's offenses. We begin with a summary of their positions.

## A. The Trial Commissioner/Bar Counsel's Position

The Office of Bar Counsel supports the trial commissioner's recommendation of a five-year suspension from the practice of law, which conditions reinstatement to practice upon obtaining the approval of the Character and Fitness Committee. SCR 3.500(3)-(6). The trial commissioner expressly noted "the egregious and protracted course of misconduct by [Hill] over a period of more than two years" and the "detailed examples of calculated deceptions of each client." The trial commissioner further noted that lesser punishments, such as a reprimand or a short suspension period, would diminish the egregious nature of Hill's conduct and would permit avoidance of further evaluation by the Character and Fitness Committee.

13

## B. The KBA Board of Governors' Position

The KBA Board of Governors recommends that Hill be suspended from the practice of law for a period of 181 days, with the additional condition that Hill's reinstatement would require the approval of the Character and Fitness Committee. The Board further recommends that Hill be required to continue substance abuse counseling through the KYLAP program.

In opposition to the punishment recommended by Bar Counsel, the Board notes that Hill had presented significant evidence in mitigation, including unrebutted expert testimony that he suffers from depression, anxiety, and alcoholism. The Board further notes that the trial commissioner's recommended five-year suspension was excessive because it fails to consider Hill's prior, unsuccessful efforts to overcome his problems and his demonstrated long-term commitment for dealing with them. The Board notes, however, that while Hill's efforts to seek help were credible and encouraging, nevertheless, the private reprimand advocated by Hill is not sufficient in light of the significant ethical violations he committed. The Board further notes that its decision "by no means leaves Hill with an easy path to return to the practice of law, but provides punishment with a road map to return."

## C. Hill's Position

Before the trial commissioner and the Board, Hill advocated in favor of a private reprimand. He has now abandoned that request. Instead, he now argues that in light of the mitigation evidence he has presented in this proceeding, the appropriate sanction would be a suspension from the practice of law for no more than 180 days, with a portion of the suspension probated

14

upon his continued compliance with his current, on-going plan for recovery. That proposal would provide a path for automatic reinstatement.

Central to these significantly differing recommendations is the weight assigned to the mitigation evidence Hill presented.

## VII. MITIGATION FACTORS

Hill received his license to practice law in 2005. From 2005 to August 2008, he worked at a small Nicholasville law firm specializing in civil practice. After leaving that firm, Hill worked as sole practitioner in Lexington until September 2010, when he joined Nathan Billings' law firm. In March or April 2011, Billings severed the relationship and from that time until the present, Hill has operated a solo practice in Lexington.

Hill presented evidence that as far back as early 2009 he began suffering from untreated depression and resulting anxiety which was aggravated by his effort to self-medicate with alcohol. These problems led to difficulties in his personal and professional life which became apparent to Hill's mother and his then-girlfriend, now-wife. At their insistence, Hill voluntarily sought help through KYLAP, which in turn put him in touch with a licensed clinical social worker for help with his substance abuse problem. While Hill admits that he accepted counseling to appease his mother and girlfriend, he nevertheless pursued help for his problem. For his depression, Hill was prescribed Lamictol, a mood stabilizing drug. He also attended individual and group counseling at St. Joseph Behavioral Center. This treatment and counseling continued from March 2009 through September 2010.

Hill's current treating psychiatrist, Dr. Brian Greenlee, began treating Hill in 2013. Dr. Greenlee testified that the counseling and treatment that Hill received during 2009-2010 was inadequate and insufficient to address his actual problems. We note that Hill's ethical misconduct occurred during the interlude between his counseling at St. Joseph, which ended in 2010, and his treatment with Dr. Greenlee, which began in 2013. In January 2013, Hill entered into a KYLAP Supervision Agreement, and in connection with that Agreement began attending Alcoholics Anonymous meetings and continues to do so at the present time.

Dr. Greenlee testified that, in his professional opinion, Hill is an alcoholic; that he suffered from depression and anxiety, conditions that were aggravated by Hill's use of alcohol. Dr. Greenlee further testified to a causal connection between Hill's untreated mental health condition and his conduct in the present disciplinary cases. Dr. Greenlee concluded that Hill's conduct in representing his clients constituted "multiple maladaptive behavior patterns," which, in combination with his depression and substance abuse, caused him to engage in conduct to avoid conflict by attempting to be all things to all people at all times.

Dr. Greenlee also testified that Hill's depressive symptoms were "mild to moderate in severity," "began sometime in law school," and "had been long-standing and untreated or incompletely treated for a long time." He explained that "when individuals [like Hill] suffer from depression, anxiety is co-morbid with that. It's not an independent diagnosis; however, it's a significant part of the symptoms that they suffer." Hill's maladaptive behavior patterns were

16

evident, according to Greenlee, by Hill's feeling that he needed "to be all things to all people at all times, and the feeling that if he was not able to provide optimal outcomes for them, or what was expected, that he would often avoid the conversation, avoid conflict[.]"

He further testified that for those who suffer from depression like Hill, "small set-backs or, you know, even trivial occurrences can be devastating" and that "because of his depressive symptoms, [Hill] over inflated what he perceived failure meant." Dr. Greenlee opined that Hill was on the path to recovery: "If he continues to engage in the same program and treatment that he is engaged in now, I think the likelihood of these occurring again are substantially reduced." The trial commissioner and the Board accepted Dr. Greenlee's finding that a causal connection existed between Hill's ethical misconduct and his undiagnosed and then ineffectively-treated depression and alcoholism.

In addition to Hill's own testimony and the testimony of Dr. Greenlee, Hill presented testimony of a client in the residential HVAC business. The client employed Hill to handle collection matters during the 2010-2012 time period when Hill's condition was at its worse and again more recently during Hill's current therapeutic regimen. The client attested to a marked improvement in Hill's demeanor, appearance, and attitude toward his work. The client described Hill as an "honest and sincere" person.

## VIII. DISCIPLINARY DECISION

Citing *KBA v. House,* 366 S.W.3d 927 (Ky. 2012) (permanent disbarment imposed for continuing misrepresentations to client and demands for fees after client's case had been dismissed) and *KBA v. Mayer,* 392 S.W.3d 922 (Ky.

17

2013) (permanent disbarment when attorney repeatedly misled client as to the status of the representation and converted escrowed client funds which were eventually returned), Bar Counsel argues that absent the mitigation evidence there is "little doubt that the appropriate sanction would be permanent disbarment," and thus a five-year suspension period adequately takes into account Hill's mitigation evidence.

In support of a more lenient sanction Hill argues that the Board's recommendation—or something less—is supported by prior disciplinary cases involving similar ethical violations. More specifically, Hill cites *KBA v. Gevedon*, 398 S.W.3d 430 (Ky. 2013); *Brady v. KBA*, 377 S.W.3d 546 (Ky. 2012); and *KBA v. Ellis*, 302 S.W.3d 75 (Ky. 2010).

In *Gevedon*, an attorney was found guilty of numerous ethical violations for, among other things, failing to file a child custody petition on her client's behalf, failing to respond to her client's attempts to contact her, failing to refund an unearned fee, and misrepresenting to her client that she had filed a custody petition, failing to act with reasonable diligence, failing to keep her client reasonably informed, failing to promptly comply with her client's request for information, and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. The attorney had received two prior private reprimands for engaging in unethical conduct. The attorney in this case received a thirty day suspension for her ethical rule violations.

In *Brady*, a client who had hired Brady to represent her in a divorce case gave Brady $2,500.00 to hire a CPA to value the client's business. Brady deposited the money in his escrow account but he never paid it to a CPA to

18

perform the valuation. Later, Brady notified the client that he wished to withdraw from representing her, telling her he would refund the $2,500.00 she provided for the CPA. Instead, Brady transferred the money to his office operating account. Later, he falsely informed the client that he had received a refund from the CPA and would forward it to her. The client did not receive the refund until after she filed a bar complaint.

Brady was also charged with ethical violations for his conduct in representing a married couple on an insurance claim for a storm-damaged roof. Brady told the clients that he had filed suit against the insurance company, that the case was proceeding normally, and that a trial date would be scheduled. Eventually, the clients discovered that Brady deceived them about his progress in the suit. For his deception, Brady was suspended for 181 days with all but 60 days of the sanction suspended for two years.

In *Ellis*, the attorney (Ellis) billed his client for services never performed; failed to "act with reasonable diligence and promptness in representing a client;" failed to keep his client reasonably informed about the status of her case; failed to promptly comply with her reasonable requests for information; and engaged "in conduct involving dishonesty, fraud, deceit, or misrepresentation" when he led his client to believe that he was working on her divorce action when he was not, and for failing to return to her any unearned fees. Ellis was also charged in a separate but consolidated matter with improperly billing an indigent client. For these violations, Ellis was suspended from practice for ninety days.

For evidence of a lawyer's disability to be accorded a mitigating effect in a KBA disciplinary case, it must be shown that the disability caused the misconduct. *KBA v. Steiner*, 157 S.W.3d 209, 213 (the burden of establishing a successful mitigation defense remains with the attorney); *KBA v. Christian*, 320 S.W.3d 687 (Ky. 2010). The attorney must also show a recovery from the condition demonstrated by "meaningful and sustained proof of successful rehabilitation." *Id.* at 690 (citing ABA Standards for Imposing Lawyer Sanctions Section 9.32(i)(3)). Moreover, "the misconduct must have stopped and recurrence proved to be unlikely." *Id.* In this vein, consideration should also be given to the attorney's involvement in Alcoholics Anonymous and "earnest participation in the Kentucky Lawyer's Assistance Program." *KBA v. Hawkins*, 260 S.W.3d 337, 339 (Ky. 2008); ABA Standards for Imposing Lawyer Sanctions Section 9.32.[4]

We agree with the findings of the trial commissioner and the Board that Hill's misconduct was causally related to his mental health disorders. The evidence of Hill's effort to deal with his disabling depression and alcoholism

---

[4] Section 9.32 factors which may be considered in mitigation.

Mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; *(i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;* (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses. (emphasis added).

may be considered as mitigating evidence in our disciplinary decision. However, after reviewing the facts of Hill's misconduct toward his clients; considering the mitigating circumstances presented, including his ongoing, apparently successful treatment and payment of restitution to the affected clients; and reviewing the applicable rules of professional conduct and our case law, we are persuaded that none of the proposed sanctions strikes the appropriate balance for a disciplinary disposition of this matter.

Hill's request for a modest suspension from practice coupled with stringent conditions for ongoing therapeutic treatment and the Board's proposal for a 180-day suspension unduly depreciate the substantial harm that Hill's calculated, extended, and pervasive deceit caused to his clients, to our system of justice, and to the public's trust in the legal profession. We believe that a suspension from the practice of law for 180 days or less provides insufficient time for assessing the durability of Hill's commitment to his treatment regimen, the efficacy of his ongoing treatment. It is also an insufficient time for evaluating the nature of Hill's integrity and character once he is relieved of, or at least in control of, the maladaptive behavior patterns that so egregiously influenced his conduct in the past. In other words, it is our considered opinion that Hill, the legal profession, and the public we are bound to serve, will benefit if the effect of Hill's rehabilitation can be assessed over a greater period of time.

We also conclude that the Bar Counsel's recommendation for a five-year suspension fails to adequately account for the rehabilitative measures Hill is already undertaking. A five-year suspension under the circumstances of this

21

case underestimates the value of a disciplinary measure that protects the public by punishing and temporarily removing the wrongdoer, while at the same time leaves open a path to reinstatement within a reasonable time, if the wrongdoer can prove that he has regained the character and fitness worthy of the public trust.

Therefore, we find that the proper disciplinary sanction in this matter is suspension from the practice of law for a period of eighteen months. Reinstatement is subject to all conditions set forth in the Supreme Court Rules, including review by the Character and Fitness Committee, and to Hill's continued substance abuse treatment in conjunction with the KYLAP program.

## IX. ORDER

Based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** as follows:

1. Respondent, David L. Hill, KBA Member No. 91025: in KBA File No. 21450, is guilty of violating Count I: SCR 3.130-1.4(a)(3), Count II: SCR 3.130-1.4(a)(4), and Count III: SCR 3.130-8.4(c); in KBA File No. 21496, is guilty of violating Count I: SCR 3.130-1.2, Count II: SCR 3.130-1.3, Count III: SCR 3.130-1.4(a)(3), Count IV: SCR 3.130-1.4(a)(4), Count VI: SCR 3.130-8.4(b), and Count VII: SCR 3.130-8.4(c); and in KBA File No. 21630, is guilty of violating Count II: SCR 3.130-1.4(a)(3), Count III: SCR 3.130-1.4(a)(4), and Count V: SCR 3.130-8.4(c);

2. As discipline for these violations, Hill is suspended from the practice of law for a period of eighteen months, with the additional condition that Hill continues treatment for substance abuse in conjunction with the KYLAP

22

program. Reinstatement upon the expiration of the period of suspension shall be in accordance with the Supreme Court Rules and shall include appropriate review by the Character and Fitness Committee;

3. Pursuant to SCR 3.390, Hill shall notify, in writing, all courts in which he has matters pending of his suspension from the practice of law, and notify in writing all clients of his inability to represent them and of the necessity and urgency of promptly retaining new counsel. Such notification shall be by letter duly placed in the United States mail within ten days of the date of this Opinion and Order. Hill shall simultaneously provide a copy of all such letters to the Office of Bar Counsel. Furthermore, to the extent possible and necessary, Hill shall immediately cancel and cease any advertising activities in which he is engaged; and

4. In accordance with SCR 3.450, Hill is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $2,158.45, for which execution may issue from this Court upon finality of this Opinion and Order.

Minton, C.J.; Abramson, Cunningham, Noble, Keller, and Venters, JJ., sitting. All concur. Wright, J., not sitting.

ENTERED: December 17, 2015.

CHIEF JUSTICE

23