TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2018-SC-000377-KB

DATE 12/27/18 Kim Redmon, DC

KENTUCKY BAR ASSOCIATION                                        MOVANT

V.                          IN SUPREME COURT

STEVEN HARRIS KEENEY                                      RESPONDENT

## OPINION AND ORDER

Steven Keeney was admitted to practice law in the Commonwealth on May 19, 1981. His Kentucky Bar Association ("KBA") Number is 37760, and his bar roster address is 5208 Moccasin Trail, Louisville, KY 40207. The Board of Governors ("Board") recommends that this Court find Keeney guilty of six of the eight charges against him. The Board considered two separate suspensions, one for two years and the other for four, and ultimately voted 11-5 in favor of a two-year suspension. For the following reasons, we adopt the Board's recommendation on the guilty findings, but determine that Keeney should be suspended from the practice of law for four years.

### I. **Factual and Procedural Background.**

In October 2002, a small plane flew into Brenda Osborne's house in Middlesboro, Kentucky, while she was watching TV in her living room. She

hired a lawyer to pursue her insurance claims with State Farm. Six months later, after her original lawyer had not collected any insurance proceeds for her, she terminated initial counsel and hired Keeney. Notably, prior to commencing representation, Keeney instructed Osborne on the proper way to terminate her first attorney.

Keeney told Osborne that he required a $5,000 retainer, and the contract for services entitled Keeney to 20% of recovery, plus a $75.00 an hour "reduced" fee, given that he would normally be entitled to 30% of total recovery. Osborne did not receive a copy of the contract until she initiated a civil suit several years later. The contract produced by Keeney was eight pages long with two pages numbered six—one with Osborne's ex-husband's name and one without it— whereas Osborne claims the contract she signed was only three pages long and included a $50,000 cap on Keeney's portion of recovery. The eight-page contract also included indemnification language and a provision stating that representation did not include the filing of a civil suit.

State Farm never questioned coverage. Only a few days after Keeney's representation started, State Farm gave Keeney and Osborne two checks totaling $151,390.52. By August 2003, State Farm had paid over $230,000, with Keeney taking 20% of the recovery. During this time, Osborne stated that her intention from the outset was to file a civil suit against the pilot of the airplane and his company. The one-year statute of limitations expired in October 2003, with Keeney never filing the case. Keeney claimed that he was worried about Osborne's mental health during this time and maintains that he

2

met with her monthly even though no records of these meetings, nor proof that he ever gave her the original contract, exists. Keeney was unresponsive to Osborne's repeated attempts to contact him by phone.

In June 2004, Keeney received another check from State Farm for $11,076.11, payable to Keeney, Osborne, and Osborne's ex-husband. The check was dated June 7, 2004. In July 2004, Keeney endorsed the check for all three parties—which both Osborne and Osborne's ex-husband claim they did not give Keeney permission to do—and deposited it into his personal account that had been overdrawn for twelve days. Finally, in August 2004, Keeney sent Osborne $2,920.88 from the above check, and claimed that Osborne owed him an additional $5,780.00 for his $75 hourly fee working on the case. Keeney did not provide an accounting for how he calculated that total. Further, Osborne did not know about the actual $11,076.11 check until discovery during the civil malpractice case.

During the fall of 2004, Keeney and Osborne finally discussed the possibility of filing a civil suit against the pilot and his company. Keeney strongly discouraged filing, because he believed they would at most receive $50,000, and an expert would "eat up" $30,000. Conversely, the aviation expert at the civil malpractice trial opined that "[i]f it had been filed on time it was definitely a case of punitive damages and it is the strongest case of punitive damages I've ever seen in an aviation case." Osborne later stated that she "was just astonished because [a lawsuit] had been the goal from the beginning and I was willing to pay him some of the money from State Farm

3

because he told me I could get some of the difference and more from the airline insurance." Additionally, Keeney never informed Osborne that the statute of limitations had passed.

Around this time, Keeney claimed that Osborne terminated their relationship, however, nothing exists in Keeney's records, State Farm's records or Osborne's records that would indicate this. In fact, exactly two years after the incident, Keeney filed a civil claim on Osborne's behalf in Bell Circuit Court and attempted to circumvent the statute of limitations by arguing that Osborne was of "unsound mind" after the accident, and therefore, the statute of limitations should have been tolled. The case was removed to federal court. At the later civil malpractice trial, defense counsel for the pilot testified that had it not been for the statute of limitations, he would have recommended settlement within policy limits once limited discovery had taken place as to damages.

However, instead of pursuing a settlement, Keeney failed to take action on Osborne's case. He (1) failed to file the claim even after the adjuster for one of the insurance companies alerted him to the statute of limitations deadline in 2003, (2) failed to give her a copy of the complaint before filing, (3) waited two months to inform Osborne of discovery requests propounded by defendants, (4) did not assist Osborne with discovery requests, (5) never responded to defendants' request for Osborne's medical records, (6) did not provide a list of proposed doctors for Osborne's IME, even though she had given him a list, (7) failed to inform Osborne that the doctor chosen by the defendants was a psychiatrist, looking into her mental health, not a doctor looking into her

4

physical damages, (8) failed to provide defendants' counsel with answer to interrogatories and discovery requests which Osborne had hand-delivered to Keeney, (9) failed to file a response to defendants' summary judgment motion, and (10) failed to respond to motions to compel and requests for sanctions. Keeney never formally withdrew from the case and in fact represented Osborne at her deposition. Defense counsel filed a summary judgment motion based on a statute of limitations defense in October 2005. In November 2005, after receiving no response from Keeney, the federal court granted summary judgment, dismissed Osborne's case, and issued sanctions in the amount of $1,100. Not until January 2006 did Osborne discover that her claim had been dismissed and sanctions issued against her. To add insult to injury, Osborne's doctor let her know of the dismissal, not Keeney.

Osborne filed a bar complaint against Keeney in February 2006 and filed a civil suit against him soon after. Keeney requested that the bar complaint be held in abeyance until completion of the civil suit. Eventually the malpractice suit was tried and subsequently appealed to the Court of Appeals, after which this Court granted discretionary review. We reversed the multi-million-dollar jury verdict due to the giving of improper jury instructions at trial. *See Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012). The malpractice action was eventually settled, after which the bar complaint was reopened, and the Inquiry Commission issued a charge on December 29, 2014. The Inquiry Commission

5

charged Keeney on the following eight counts, (1) Lack of Diligence, SCR[1] 3.130(1.3); (2) Inadequate Communication, SCR 3.130(1.4)(a); (3) Unreasonable Fee, SCR 3.130(1.5)(a); (4) Conflict of Interest, SCR 3.130(1.8)(h); (5) Safekeeping property, SCR 3.130(1.15)(a); (6) Failure to Obey Court Orders/Rules, SCR 3.130 (3.4)(c); (7) Criminal Conduct, former SCR 3.130 (8.3)(b), now (8.4)(b) and; (8) Dishonesty, Deceit, or Misrepresentation, former SCR 3.130 (8.3)(c), now (8.4)(c).[2] After a hearing and briefing by both parties, the Trial Commissioner found Keeney guilty of all eight counts and recommended a five-year suspension. Subsequently, the Board found Keeney guilty on all but Counts Three and Seven and recommended a two-year suspension. Pursuant to SCR 3.370(7), both parties filed a notice of review with this Court.

## II. **Analysis.**

First, we agree with the Board that Keeney committed at least six of the charges against him. The facts in this case detail a complete lack of diligence, inadequate communication, and failure to obey court orders by Keeney, thus establishing guilt on Counts One, Two, and Six. By including a release of liability provision in his eight-page contract with Osborne, and then providing no evidence that she was independently represented, Keeney created a conflict of interest, demanding a finding of guilt on Count Four. Further, by depositing a check for Osborne's insurance proceeds into his personal account Keeney is

---

[1] Kentucky Rules of the Supreme Court.
[2] Counts Seven and Eight were in effect at the time of the misconduct.

6

guilty of commingling, Count Five. Lastly, by not informing Osborne of the dismissal of her case or the sanctions against her, Keeney is guilty of Count Eight.

The last two counts are Count Three (unreasonable fee) and Count Seven (criminal conduct). While Keeney's fee is unconventional, it does not appear to be unreasonable. His eventual recovery was around 23% of Osborne's total insurance proceeds. Although his complete lack of records and other instances of misconduct are egregious, this "blended" fee arrangement does not seem so unreasonable as to warrant additional discipline. *See Kentucky Bar Ass'n v. Earhart*, 360 S.W.3d 241, 244 (Ky. 2012) ("Although 'reasonableness' at the time of contracting is relevant, consideration is also to be given to whether events occurred after the fee agreement was made which rendered the fee agreement fair at the time it was entered into, but unfair at the time of enforcement[]") (internal citation omitted).

Count Seven is a close call. We first note that "a prosecution or conviction is not a prerequisite for finding a violation of the rules of professional conduct, which need only 'be proven by a preponderance of the evidence.'" *Kentucky Bar Ass'n v. Glidewell*, 348 S.W.3d 759, 762 (Ky. 2011) (quoting SCR 3.330). Arguably, Keeney may have committed forgery in the second degree under KRS[3] 516.030 which provides that "when, with the intent to defraud, deceive, or injure another, he falsely makes, completes or alters a

---

[3] Kentucky Revised Statutes.

written instrument[.]" However, even if we believe that the Osbornes did not authorize Keeney to sign checks for them, it appears that Keeney believed he had authority to do so, as he had signed their signature in other places as well. Therefore, we are unable to find Keeney's actions criminal by a preponderance of the evidence and must dismiss the charge.

That said, the facts of this case establish a litany of misconduct by Keeney during his representation of Osborne. These acts of misconduct were detrimental to Osborne's case and adversely impacted her health and welfare. Further, several aggravating factors exist in this case. First, Keeney has a history of prior discipline. In 1993, he was suspended 59 days for failing to return an unearned fee to a client and for failure to exercise diligence and promptness in the representation of a client. In 1994, Keeney was suspended 60 days for failing to keep a client reasonably informed about the status of a matter, failing to comply with reasonable requests for information, as well as failing to act with reasonable diligence and promptness in representing a client.

"Upon an adjudication of guilt, our task is to impose the appropriate sanction in light of the ethical misconduct." *Kentucky Bar Ass'n v. Hill*, 476 S.W.3d 874, 881 (Ky. 2015). Although not recommended by the Board nor either party, we believe that a four-year suspension is warranted, given the egregiousness of Keeney's misconduct, the striking similarity of the misconduct

8

to Keeney's past-sanctioned behavior, and the vulnerability of the client.[4] *See id.* at 885 (this Court imposed its own disciplinary sanction since "none of the proposed sanctions strikes the appropriate balance for a disciplinary disposition of this matter[]").

Accordingly, it is hereby ORDERED that:

1. Steven Harris Keeney is hereby suspended from the practice of law in Kentucky for four years; and

2. In accordance with SCR 3.450, Keeney must pay all costs associated with these proceedings, said sum being $4,152.56, for which execution may issue from this Court upon finality of this Opinion and Order; and

3. Under SCR 3.390, Keeney shall, within ten days from the entry of this Opinion and Order, notify all clients, in writing, of his inability to represent them; notify, in writing, all courts in which he has matters pending of his suspension from the practice of law; and furnish copies of all letters of notice to the Office of Bar Counsel. Furthermore, to the extent possible, Keeney shall immediately cancel and cease any law practice-based advertising activities in which he is engaged.

All sitting. Minton, C.J.; Hughes, Keller, VanMeter, and Venters, JJ., concur. Cunningham, J., dissents by separate opinion in which Wright, J., joins.

---

[4] Keeney claimed Osborne was incapacitated from the incident, and her original treating physician stated that she was suffering from "increased anxiety and depression" from the plane crash.

CUNNINGHAM, J., DISSENTING: I would defer to the Board of Governors.

Wright, J., joins.

ENTERED: December 13, 2018.

_____
CHIEF JUSTICE